No. 13648

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

THE CITY OF LIVINGSTON et al.,

Petitioners,

-vs-

MONTANA COUNCIL NO. 9, AMERICAN
FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, et al.,

Respondents.

Appeal from: District Court of the Sixth Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Petitioners:

Alexander, Kuenning, Miller and Ugrin, Great Falls,
Montana
Neil Ugrin argued, Great Falls, Montana

For Respondents:

Byron L. Robb argued, Livingston, Montana

Submitted: October 4, 1977
Decided: NOV 10 1977

Filed: NOV 10 1977

Thomas J. Kearney
Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Montana Council No. 9, American Federation of State, County and Municipal Employees brought an unfair labor practice charge against respondent City of Livingston. The Board of Personnel Appeals hearing examiner found that the city did commit an unfair labor practice. The Board of Personnel Appeals affirmed its hearing examiner. The city sought judicial review in the District Court under the Administrative Procedure Act. The District Court reversed the Board of Personnel Appeals and appellants appeal from that District Court ruling.

Respondent City of Livingston (the City) entered into a written collective bargaining agreement with its employees on January 2, 1973. Paragraph X of the agreement dealt with discharge or suspension and stated in pertinent part:

> "1. After an employee has attained seniority he will not be disciplined or discharged without first being given a hearing by the employer and the Local Committee."

Appellant Kenneth Dyer had attained seniority as a city employee. In September, 1973, he was reduced from full-time to half-time employee status pursuant to City Superintendent Bulletin No. 27. In October, 1973, Dyer requested a hearing to review his reduction to half-time status. The grievance committee held a hearing in October, 1973, with Dyer present, but no decision was reached. In February, 1974, Dyer asked for another review of his half-time status. A city councilman told Dyer it was unnecessary for Dyer to attend the hearing. Dyer did not attend the February 4, 1974 hearing.

At the February 4, 1974 hearing, evidence was introduced, but since Dyer was not present he could not contest it. Councilman Gilbert testified that "Had he been there, he probably would

- 2 -

have contested it vociferously". City Superintendent Tom Sharp issued "Bulletin No. 31", which was a written statement of the committee's conclusions, and delivered a copy to Dyer. The bulletin announced Dyer was:

> " * * * placed on one-half month work basis for the second one-half of each month (the first one-half work was not affected by the previous bulletin), subject to the following conditions: * * *
>
> " * * *
>
> "5. Before being placed full time, permanent, with the Water Dept., he will become licensed by the Montana State Board of Certification for Water Operators, treatment and distribution.
>
> "6. Acceptance of this placement by Ken Dyer is construed as his acceptance of these conditions * * *.
>
> "ANY VIOLATION OF ANY CONDITION SET FORTH WILL BE CAUSE FOR IMMEDIATE TERMINATION OF CITY EMPLOYMENT."

Dyer had twice previously failed a written water operator's test. He failed a third time in April, 1974, and was discharged effective July 15, 1974. Subsequent to his dismissal, he took a written test, his fourth, and also an oral water operator's test, but he failed both. In December, 1974, almost six months after Dyer's losing his job, the union requested a grievance committee hearing on Dyer's discharge, pursuant to the collective bargaining agreement. The city refused to hold a hearing.

The issue presented on appeal is whether the city's failure to provide Dyer a dismissal hearing constituted an unfair labor practice.

By failing to grant Dyer a grievance hearing, the city breached its collective bargaining agreement, and thereby committed an unfair labor practice in violation of section 59-1605(1)(a), R.C.M. 1947. That section provides in part:

> "It is an unfair labor practice for a public employer to:
>
> "(a) interfere with, restrain, or coerce employees in the exercise of the rights

- 3 -

guaranteed in section 59-1603 of this act;"

Section 59-1603(1) provides:

"Public employees shall have * * * the right
* * * to bargain collectively * * *."

The phrase "to bargain collectively" is defined in section 59-1605(3) as:

" * * * the performance of the mutual obligation of
the public employer * * * and the representatives
of the exclusive representative to * * * negotiate
in good faith with respect to * * * conditions of
employment, or the negotiation of an agreement, or
any question arising thereunder. * * *" (Emphasis
added.)

Thus, by statute, the duty to bargain "in good faith" continues during the entire course of the contract.

The Supreme Court has held that "Collective bargaining is a continuing process. Among other things it involves * * * protection of employee rights already secured by contract." Conley v. Gibson, 355 U.S. 41, 2 L Ed 2d 80, 85, 78 S.Ct. 99 (1957). The processing of grievances in grievance hearings is collective bargaining. Timkin Roller Bearing Co. v. National Labor Rel. Bd., 161 F.2d 949, 954 (6th Cir. 1947). In Ostrofsky v. United Steelworkers of America, 171 F.Supp. 782, 790 (D. Md. 1959), aff'd., 273 F.2d 614 (4th Cir. 1960), cert. den., 363 U.S. 849, 4 L Ed 2d 1732, 80 S.Ct. 1628, (1950), the court stated: " * * * the employer had the same duty to bargain collectively over grievances as over the terms of the agreement."

Under Montana's Collective Bargaining Act for Public Employees a failure to hold a grievance hearing as provided in the contract is an unfair labor practice for failure to bargain in good faith.

Paragraph X., the discharge provision previously quoted, clearly requires that an employee with seniority, such as appellant Dyer, be given a "hearing" before he is discharged. In Grant v. Michaels, 94 Mont. 452, 461, 23 P.2d 266 (1933), this Court

defined "hearing" as being " * * * synonymous with 'trial' and includes the reception of evidence and arguments thereon * * *." In Bd. of Trustees, Etc. v. Super. of Pub. Inst., _____Mont. _____, 557 P.2d 1048, 1050 (1976), this Court, in declaring a dismissal of a teacher to be improper, stated:

> " * * * where dismissal must be for good cause and regulated by statute, that one is entitled, in common justice, to an opportunity to meet the charges before being dismissed. (Citing cases.)
>
> "The opportunity to meet the charges before being dismissed under them necessarily includes notice of the charges against him, for without such notice the opportunity would be meaningless. The notice need not meet the formal requirements of a criminal indictment, however, it must be sufficiently detailed to inform the teacher of the charges against him, so he is reasonably able to formulate a defense."

In this case, the grievance which Dyer brought related solely to his reduction to one-half time status. At the grievance committee meeting, which he did not attend, evidence was produced and conclusions made which related to his dismissal, which, ostensibly, was not even in issue. The record does not contain any evidence whatsoever that Dyer was ever given any notice of an intent to discharge him until he received his notice of termination on July 1, 1974.

Respondent City of Livingston presents three arguments for upholding the District Court's decision that a dismissal hearing was unnecessary. None of these arguments is convincing. It is not, as respondent contends, indisputable that appellant must be discharged due to his failure to pass the water operator's test. Bulletin 31, issued after the second "half-time status" meeting (at which appellant was not present) stated only that appellant's failure to pass the test would preclude him from being placed on full-time, permanent status. This was not one of the enumerated conditions of employment, the breach of which would cause appellant Dyer's immediate termination of employment with the city.

- 5 -

The city also argues that petitioner Kenneth Dyer had a long history of incompetence and discipline problems on the job, and that ample facts justifying Dyer's discharge were adduced by the grievance committee at the two previous meetings concerning Dyer's half-time status. Respondent states that there is nothing for the grievance committee to consider at a discharge hearing except the same data it received before. Because "The law neither does nor requires idle acts", section 49-124, R.C.M. 1947, respondent argues that it should not be required to hold a dismissal hearing. The provision in the collective bargaining agreement requiring a "hearing" prior to dismissal was obviously contemplated by the parties to insure that an employee would not be discharged without due process. Observance of due process standards in a hearing has never been declared by this Court to be an "idle act". "'While the problem of additional expense must be kept in mind, it does not justify denying a hearing meeting the ordinary standards of due process.'" Goldberg v. Kelly, 397 U.S. 254, 25 L Ed 2d 287, 295 , 90 S.Ct. 1011 (1970), quoting Kelly v. Wyman, 294 F.Supp. 893, 901 (1968).

The city's final argument is that "the traditional judicial definition of a hearing cannot and should not be imposed on a group of laymen acting as such a [grievance] committee." This is undoubtedly true. Due process does not always mandate a judicial trial with lawyers and court reporters, but merely requires a hearing appropriate to the nature of the case and the interests of the parties involved. Mont. St. University v. Ransier, 167 Mont. 149, 536 P.2d 187. "Once it is determined that due process applies, the question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 33 L Ed 2d 484, 494, 92 S.Ct. 2593 (1972). At a minimum, however, a grievance committee must give to an employee with seniority notice of the dismissal hearing and an opportunity to be heard, so that he may defend against the charges. See Goss v. Lopez, 419 U.S. 565, 42 L Ed 2d 725, 737, 95 S.Ct. 729 (1975); Dohany v. Rogers, 281 U.S. 362, 74 L Ed 904, 912, 50 S.Ct. 299 (1930).

In this case, the two committee meetings were officially conducted solely to discuss the matter of Dyer's reduction to half-time status. Dyer received no notice and could therefore prepare no defense to the matter of his discharge. The discharge bulletin was issued from the second meeting, a committee meeting at which Dyer was not even present to present his side of the case. For the term "hearing" in the collective bargaining agreement to have any meaning, this employee must at least have notice of the alleged work violations, an opportunity to appear and present evidence in his own behalf, a right to cross-examine adverse witnesses, and a written report of the conclusions and rationale of the grievance committee. These procedures are mandated by the collective bargaining agreement which requires a hearing, as well as by "common justice". Board of Trustees v. Superintendent of Public Instruction, supra.

The decision of the District Court is reversed and the order of the Board of Personnel Appeals, finding that the city committed an unfair labor practice by not granting appellant Dyer a dismissal hearing, is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 7 -